# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| RODNEY MANYON LANE, | : | CIVIL ACTION NO. |
| GDC ID # 344423, | : | 1:15-CV-03298-TWT-JCF |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| S. McWILLIAMS, W. PARKER, | : | PRISONER CIVIL ACTION |
| A. FRALEY &  D. MATHES, | : | 42 U.S.C. § 1983 |
| Sergeants, Fulton Cnty. Jail, | : | |
| Defendants. | : | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, a state prisoner, sues four officers at the Fulton County Jail ("FCJ" or

"Jail"), alleging (1) the use of excessive force against him by handcuffing him behind

his back and (2) deliberate indifference to his resulting medical needs.  (Doc. 1).

Defendants McWilliams, Parker, Fraley and Mathes have filed a joint motion for

summary judgment.  (Doc. 45).  Plaintiff seeks appointment of counsel.  (Doc. 50).

## I.   Summary Judgment Review

Summary judgment is proper "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  "[Former] Rule 56(c) [now Rule 56(a)] mandates the

entry of summary judgment . . . against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When considering a summary judgment motion, a court must "view the evidence and all factual inferences therefrom in the light most favorable" to the non-movant. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are implausible." *Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 970 (11th Cir. 2002) (internal quotations omitted). And "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted).

The movant bears the initial burden of demonstrating that summary judgment is warranted. *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir. 1990). The movant may do so by showing "that there is an absence of evidence to support the

2

nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the movant has properly

supported the summary judgment motion, the non-movant then must "come forward

with specific facts showing that there is a *genuine issue for trial*," i.e., that the evidence

is sufficient to support a jury verdict in the non-movant's favor. *Bailey v. Allgas, Inc.*,

284 F.3d 1237, 1243 (11th Cir. 2002) (internal quotations omitted); *see also Chanel,

Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (stating

that "non-moving party must come forward with *significant, probative evidence*"

(emphasis added)). "[C]onclusory assertions . . . [without] supporting evidence are

insufficient to withstand summary judgment." *Holifield v. Reno*, 115 F.3d 1555, 1564

n.6 (11th Cir. 1997).

## II.    **Material Facts**

In allowing Plaintiff's claims to proceed, the Court summarized his factual

allegations as follows:

> [Plaintiff] was brought from [state] prison to the Jail on two separate
> occasions, in December 2014 and May 2015, for a hearing on his motion
> for new trial. He has a special "cuff to front" medical profile, due to a
> gunshot injury to his right shoulder, and he showed the profile to Sgt.
> Fraley on each occasion, but Fraley ignored it, claiming that he cannot
> read. In December 2014, Fraley handcuffed Plaintiff with his hands
> behind his back and treated Plaintiff so roughly that his shoulder was
> dislocated and he was forced to seek medical attention rather than attend
> his court hearing. Sgt. Parker observed this treatment and did nothing to

3

prevent or correct it, even refusing to remove Plaintiff's handcuffs when ordered to do so after Plaintiff requested medical attention.

In May 2015, Plaintiff received the same treatment from Sgt. Mathes (at the Jail) and Sgt. Fraley (at the courthouse), causing him tremendous pain. Each officer was indifferent to Plaintiff's complaints of pain. Fraley even joked that he had made a state prisoner cry and then refused to take Plaintiff for medical attention upon his return to the Jail. Plaintiff complained to Lt. McWilliams, who was supervising the prisoner transport and was aware of Plaintiff's medical condition, but to no avail.

(Doc. 4 at 4-5 (citations to complaint omitted)).

Defendants set forth as undisputed the following facts. Plaintiff, "awaiting an appeal on several convictions," including murder, was transferred from state prison to the Jail on December 16, 2014, where he remained until June 2, 2015. (Defs.' Statement of Material Facts (Doc. 45-2) ¶¶ 1-2). On December 19, 2014, Plaintiff filed a grievance stating that "on December 18, 2014 at 7:00AM on his way to court he was handcuffed to the back, hit in the chest and pushed into a cell door, which pulled his shoulder out." (*Id.* ¶ 4). "Plaintiff's medical records demonstrate that he was seen by medical staff at approximately 8:35AM on December 18, 2014," where he stated that "he has a torn right rotator cuff and requires being cuffed in front," and "this morning he was cuffed behind his back which caused pain in his right shoulder and left wrist." (*Id.* ¶¶ 7-8). The medical assessment was that Plaintiff had right shoulder pain and was

4

unable to fully raise his right arm, but there was "[n]o crepitus, deformity, swelling, or instability." He was given medication for pain. (*Id.* ¶ 9). Plaintiff also received an x-ray, which showed "no fractures, dislocation or joint diseases." (*Id.* ¶ 12 (internal quotations omitted)). Fulton County Sheriff's Office ("FCSO") Standard Operating Procedures ("SOP") provide that a "detainee or inmate will be restrained either by handcuffs with his or her hands behind the back or by the use of an approved restraint belt with wrist restraints." (*Id.* ¶ 13). On May 28, 2015, Plaintiff again grieved being cuffed behind his back, which "caused him pain." (*Id.* ¶¶ 14-15).

In his response to Defendants' motion for summary judgment, Plaintiff provides a sworn Declaration in Opposition. (Doc. 47 (Decl.) at 2-3). He states the following. He showed his front cuff profile to each of the Defendants, but they ignored it. (Decl. ¶¶ 4-8, 11-13). In May 2015, he told Parker that Fraley had dislocated his shoulder in December 2014, and Parker told Plaintiff to go let him dislocate it again. (*Id.* ¶ 8). "On December 18, 2014, [] Fraley told [Plaintiff] to put his hands to his sides then snatch[ed] both arms to [his] back then cuff[ed] him dislocating his shoulder," then hit Plaintiff in the chest and pushed him into the cell door. (*Id.* ¶¶ 9-10). "On May 28, 2015 Sgt. Fraley deni[ed Plaintiff] medical treatment for left shoulder pain and right wrist swelling and pain." (*Id.* ¶ 15). On June 2, 2015, Plaintiff was sent to state

5

prison, where he was treated "for his left shoulder and right wrist." (*Id.* ¶ 16). The FCSO procedures, SOP 7.01, provide that "extra care must be exercised by the transporting deputy when transporting . . . physically impaired detainees or inmates," and the deputy "will make certain that the method of restraint chosen is appropriate to any potential conditions that may be presented by the person in custody." (*Id.* ¶¶ 19-20; *see* Ex. D, Doc. 47-2). Defendants violated FCSO SOP 7.01. (Decl. ¶ 21). Plaintiff has also provided a copy of his "safety front cuff profile." (*Id.* ¶ 22; *see* Ex. A, Doc. 47-1; Ex. C, Doc. 47-3; Ex. E, Doc. 47-5).

Defendants respond to each of these facts by stating: "Defendants object to this statement on the grounds that it does not comply with the provisions set out in L.R. 56.1.B(1) because it is not supported by a citation to evidence." (Doc. 49).

## III. Defendants' Motion for Summary Judgment

Defendants argue in support of their summary judgment motion:

Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal. *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002). What would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time. [*Id.* at 1353.] Here, Defendants followed [FCSO SOP] which requires the use of handcuffs behind the back during transport[.]

6

(Doc. 45-1 at 6). Defendants argue further that "[t]he medical records dispute that

Plaintiff suffered a dislocated shoulder" on December 28, 2014. (*Id.* at 7). They

contend that the dispute over whether they were aware of Plaintiff's front cuff profile

is immaterial because "Plaintiff has produced no evidence of anything that would

indicate that he would have been at risk of serious harm or injury by being handcuffed

behind his back." (*Id.* at 8-9).

> Defendant[s] used reasonable force consistent with the [SOP] in handcuffing Plaintiff with hands to the back. The force applied did not become excessive simply because Plaintiff asserts that it aggravated his alleged prior injury. Furthermore, it is undisputed that no Defendant knew of Plaintiff's alleged pre-existing injury. Therefore, handcuffing Plaintiff with hands to the back does not rise to the level of a constitutional violation.

(*Id.* at 9 (citations omitted)).

Defendants also argue that they applied force to Plaintiff in a good-faith effort

to protect "the safety and security of those in custody, the general public and [FCSO]

personnel," and used the appropriate amount of force "in an inherently dangerous

[situation], especially when transporting convicted felons, like Plaintiff," whose status

as a convicted murderer "would alarm any reasonable person, including Defendants";

and they note that Plaintiff's injuries were "[r]elatively minor[,] consisting of abrasions

and swelling." (*Id.* at 10-13).

7

Defendants['] action[s] on December 18, 2014 and[] May 28, 2015[,] cuffing Plaintiff behind the back during the course of transporting [him] to the courthouse, [were] not the [use] of force applied maliciously and sadistically for the purpose of causing harm, but instead [were intended] to maintain order (applied in conformity with the training that the Defendants obtained and with the [SOP]).

(*Id.* at 13).

With respect to Plaintiff's medical deliberate indifference claim, Defendants argue that "Plaintiff's medical records show that [he] merely suffered [] 'pain.' The records demonstrate that no visible damage existed to put the Defendants on notice of Plaintiff['s] alleged prior existing [serious medical] condition." (Doc. 45-1 at 15). They argue that there is no evidence that "any of the Defendants had subjective knowledge of the Plaintiff's alleged pre-existing injury to his shoulder or wrist or that [any] Defendant knew that handcuffing Plaintiff with hands to the back would injure Plaintiff. There is no evidence that Defendants disregarded the risk to the Plaintiff." (*Id.* at 16).

## IV.  Analysis

### A.  Excessive Force

In Eighth Amendment excessive force cases, the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v.*

8

*Gaddy*, 559 U.S. 34, 37 (2010) (quotation marks omitted) (concluding that a gratuitous beating by prison guards, even without injuries requiring medical attention, violated a prisoner's Eighth Amendment rights). In determining whether the force was applied maliciously and sadistically to cause harm, courts consider: "a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to temper the severity of a forceful response." *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009). "When considering these factors, we give a wide range of deference to prison officials acting to preserve discipline and security . . . ." *Id.* (quotation marks omitted).

*Bowden v. Stokely*, 576 Fed. Appx. 951, 953 (11th Cir. 2014); *see id.* at 954-55 ("In Eighth Amendment excessive force cases, [] 'the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution.' " (quoting *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002))); *see also Marantes v. Miami-Dade Cnty.*, 649 Fed. Appx. 665, 672 (11th Cir. 2016) ("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." (internal quotations omitted)).

Defendants argue that painful handcuffing does not constitute a constitutional violation when the injury sustained is minimal. The single case they cite to support

9

this proposition involved the handcuffing of an arrestee. (*See* Doc. 45-1 at 6 (citing *Rodriguez v. Farrell*, 280 F.3d 1341, 1351, 1353 (11th Cir. 2002))). But a different standard applies to an excessive force claim brought by a prisoner — in order to prevail on such a claim, a prisoner need not demonstrate that he was injured by the force used, only that it was applied maliciously. *See Gaddy*, 559 U.S. at 37. A second case cited by Defendants acknowledges this distinction. (*See* Doc. 45-1 at 11-12 (citing *Vicks v. Knight*, 380 Fed. Appx. 847 (11th Cir. 2010), where the Eleventh Circuit noted that *Gaddy* teaches that "a court ultimately should decide an excessive force claim based on the nature of the force rather than the extent of the injury," *Vicks*, 380 Fed. Appx. at 851 (internal quotations omitted))). A third case cited by Defendants — of the four they have cited to support their argument on Plaintiff's excessive force claims, other than *Gaddy* itself — is one in which the district court ignored the plaintiff's factual allegations on procedural grounds because he had not properly responded to the defendants' statement of material facts. (*See* Doc. 45-1 at 11 (citing *Williams v. Slack*, 438 Fed. Appx. 848 (11th Cir. 2011))).

And *Williams* relies on a pre-*Gaddy* case, *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) — the fourth case cited by Defendants — to support its conclusion that "[t]he minimal nature of [plaintiff's] injuries indicates that the officers

10

did not use force maliciously and sadistically to harm" him. *Williams*, 438 Fed. Appx. at 851; *but see Cockrell*, 510 F.3d at 1311-12 ("Although *in this case the extent of the injury was relatively extensive*, this factor alone is not dispositive. There is no way that [defendant] could have foreseen that a simple push would result in as much injury as [plaintiff] unfortunately suffered. That the severity of the injury could not have been reasonably anticipated makes it less likely that [defendant] acted maliciously and sadistically for the very purpose of causing harm." (internal quotations omitted) (emphasis added)). In short, whether or not Plaintiff suffered serious injury as a result of the use of force against him is not dispositive of his excessive force claims.

Defendants do not dispute that they were aware of Plaintiff's cuff to front profile, nor do they dispute Plaintiff's allegation that they simply ignored the profile. Sgt. Fraley does not dispute that he told Plaintiff that he could not read, and thus the profile meant nothing to him, or that he bragged that he had made Plaintiff cry. It also appears that the SOP at issue here allows for front cuffing, using a restraint belt, for prisoners with physical problems such as those professed by Plaintiff.

Defendants assert that they made good-faith efforts to maintain order and security by handcuffing Plaintiff to the rear, but they do not set forth any facts to show that Plaintiff was a threat to the order and security of the Jail transports to which he

11

was assigned. Stating that Plaintiff's status as a convicted murderer "would alarm any reasonable person, including Defendants" (Doc. 45-1 at 12-13), is simply not enough to prevail at the summary judgment stage on the issues of whether there was a "need for the application of [the amount of] force" described by Plaintiff, a description that Defendants do not dispute; or whether there was a "threat to the safety of staff and inmates" that required the amount of force Plaintiff has described. *See Stokely*, 576 Fed. Appx. at 953. And a factfinder could conclude from Sgt. Fraley's boasting about making Plaintiff cry, which Sgt. Fraley does not deny, that "the force was applied maliciously and sadistically to cause harm." *See id.*

In short, Defendants do not dispute the facts alleged and sworn to by Plaintiff, facts which, if proven, are sufficient to convince a factfinder that Defendants used, or countenanced the use of, excessive force against Plaintiff. At most, what is now before the Court is the type of swearing match that is not amenable to disposition on summary judgment. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("The contradiction [between plaintiff's non-conclusory, albeit self-serving, sworn statements and the police officers' assertions] presents a classic swearing match, which is the stuff of which jury trials are made."); *see id.* at 1253, 1254 (noting that plaintiff's "sworn statements are no more conclusory, self-serving, or unsubstantiated

12

by objective evidence than the officers' assertions"; and affirming the district court's denial of summary judgment to the officers on qualified immunity grounds). The district court should deny summary judgment to Defendants on Plaintiff's excessive force claims.

## B.    Medical Deliberate Indifference

The Eighth Amendment prohibits indifference to a prisoner's serious medical needs so deliberate that it "constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotations omitted). "To prevail on a claim of deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury." *McDaniels v. Lee*, 405 Fed. Appx. 456, 458 (11th Cir. 2010) (citing *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009)).

"A 'serious medical need' is one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010) (internal quotations omitted). "In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition." *Mann*, 588

13

F.3d at 1307.

"To satisfy the subjective element of [a] deliberate indifference [claim, a] . . . Plaintiff must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (internal quotations omitted) (noting that subjective knowledge requires that defendant " 'must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* [] must also draw the inference' " (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added in *Bozeman*)); *see also Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010).  But "[w]hether a particular defendant [to a deliberate indifference claim] has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.' " *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007) (quoting *Farmer*, 511 U.S. at 842).

"A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to

14

needlessly suffer the pain resulting from his or her illness." *McElligott v. Foley*, 182

F.3d 1248, 1257 (11th Cir. 1999) (noting that "prison officials may violate the Eighth

Amendment's commands by failing to treat an inmate's pain"). In determining

whether a delay in treatment rises to the level of deliberate indifference, relevant

factors include: "(1) the seriousness of the medical need; (2) whether the delay

worsened the medical condition; and (3) the reason for the delay." *Goebert*, 510 F.3d

at 1327.

> Delay in providing "diagnostic care and medical treatment known to be
> necessary" can qualify as deliberate indifference. *H.C. ex rel. Hewett v.
> Jarrard*, 786 F.2d 1080, 1086 (11th Cir. 1986); *see also Ancata v. Prison
> Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("[I]f necessary
> medical treatment has been delayed for non-medical reasons, a case of
> deliberate indifference has been made out."). That delay, however, must
> be "tantamount to unnecessary and wanton infliction of pain," and [the
> Eleventh Circuit] *require[s] an inmate who alleges a delay-based Eighth
> Amendment claim to "place verifying medical evidence in the record to
> establish the detrimental effect of delay in medical treatment to succeed."
> Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187-88 (11th Cir.
> 1994) (quotation marks omitted), *abrogated on other grounds by Hope
> v. Pelzer*, 536 U.S. 730 (2002).

*Simmons v. Monserrate*, 489 Fed. Appx. 404, 406-07 (11th Cir. 2012) (emphasis

added) (affirming grant of summary judgment to defendants on plaintiff's deliberate

indifference claim, in part because, "importantly, [plaintiff] has not proffered any

'verifying medical evidence' to establish the detrimental effect of a delay in medical

15

treatment"). "To survive summary judgment, a plaintiff must show that the delay attributable to the defendant's [alleged] indifference likely caused the plaintiff's injury" and, as noted above, "*must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.*" *Lee*, 405 Fed. Appx. at 458-59 (emphasis added) (citing *Goebert*, 510 F.3d at 1329; *Hill*, 40 F.3d at 1188).

Plaintiff cannot prevail on a deliberate indifference claim against the named Defendants regarding the December 2014 incident because he was taken for a medical examination immediately after he complained of injury. Plaintiff was not taken for a medical examination in May 2015, and he alleges, without evidentiary support, that an MRI at Ware State Prison upon his return from the Jail shortly thereafter "showed a small fracture in [his] right wrist from Sgt. Fraley put[t]ing the handcuffs on very very tight." (Doc. 47 at 5). But without supporting evidence, Plaintiff may not proceed on this medical deliberate indifference claim, either. Defendants are entitled to summary judgment on Plaintiff's deliberate indifference claims.

## V.    Conclusion

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (Doc. 45) be **GRANTED in part** on Plaintiff's medical deliberate

AO 72A
(Rev.8/82)

indifference claims; and **DENIED in part** on Plaintiff's excessive force claims

because there remain genuine issues of material fact for trial regarding those claims;

and that Plaintiff's motion for appointment of counsel (Doc. 50) be **GRANTED**.

The Clerk is **DIRECTED** to withdraw the reference to the Magistrate Judge.

**SO RECOMMENDED** this 22nd day of June, 2017.

       /s/ *J. CLAY FULLER*
       J. CLAY FULLER
       United States Magistrate Judge

AO 72A
(Rev.8/82)